UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

AMADOU SOWE,

                      **Plaintiff,**

      v.                                  3:17-CV-449
                                         (FJS/DEP)

**PALL CORPORATION,**

                      **Defendant.**
_____

| APPEARANCES | OF COUNSEL |
|---|---|
| **OFFICE OF EDWARD E. KOPKO**<br>308 North Tioga Street, 2nd Floor<br>Ithaca, New York 14850<br>Attorneys for Plaintiff | **EDWARD E. KOPKO, ESQ.** |
| **SEYFARTH SHAW LLP**<br>620 Eighth Avenue<br>New York, New York 10018<br>Attorneys for Defendant | **STACEY BENTLEY, ESQ.**<br>**RAYMOND C. BALDWIN, ESQ.** |

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    Pending before the Court is Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See* Dkt. No. 20.[1]

---

[1] The Court scheduled oral argument regarding this motion for August 10, 2018, in Albany, New York. *See* Motion Scheduling Notice dated July 3, 2018. However, due to some confusion about the location, Plaintiff's counsel failed to appear. Therefore, the Court determined that, rather than reschedule the hearing date, it would decide the motion based on the parties' submissions.

## II. BACKGROUND

Plaintiff commenced his employment with Defendant in 1988; and, at all times during his employment, Plaintiff worked at Defendant's facility in Cortland, New York. Plaintiff's last position with Defendant was "Principal Scientist" in the "Central Technology Organization ("CTO"), one of Defendant's many business units. From November 1, 2015, through the end of his employment with Defendant, Plaintiff's managers were Thomas Sorensen, Director, Research & Development, and Eilidh Bedford, Vice President, Research & Development. At all relevant times, there was a Human Resources ("HR") Office at Defendant's Cortland Facility, in which Melanie Carr was the HR Director and Pamela Denmark was the HR Manager.

On November 11, 2015, Plaintiff met with Mr. Sorensen, Ms. Denmark, and Scott Hopkins, Senior Director, Research & Development, at which time they informed him that his position would be eliminated the following month. In fact, in December 2015, Defendant effected a reduction in force ("RIF") within its CTO, resulting in the separation of thirteen CTO employees, one of whom was Plaintiff. During the November 11, 2015 meeting, management and HR also explained to Plaintiff that, before the end of the year, he would receive a severance package offer for his consideration.

On December 23, 2015, Mr. Sorensen and Ms. Denmark met with Plaintiff and hand-delivered a proposed Separation and General Release Agreement ("Separation Agreement"), along with an RIF Memo, which included a chart of impacted and non-impacted CTO employees. The Separation Agreement expressly provided as follows:

> Plaintiff's last day of employment with Defendant was January 1, 2016;
>
> In exchange for his execution and non-revocation of the Separation

>   > Agreement, Plaintiff would receive monetary consideration to which he was not otherwise entitled;
>   >
>   > In exchange for the monetary consideration, Plaintiff would be "unconditionally and irrevocably releas[ing], waiv[ing], discharg[ing], and giv[ing] up" all "actions, charges, controversies, demands, causes of action, suits, rights, and/or claims whatsoever for . . . damages," against [Defendant], through the date he executed the agreement, including those arising under "the Age Discrimination in Employment Act ("ADEA"), the Older Workers' Benefit Protection Act . . . [and] the New York State Human Rights Law" and including claims "of which [Plaintiff] is not aware; and
>   >
>   > The Settlement Agreement would be effective on the 8th day after Plaintiff executed it if he did not revoke his signature by that date.
>
> *See generally* Dkt. No. 20-7, Separation and General Release Agreement.
>
>   In addition, the Separation Agreement required the following representations from Plaintiff:
>
>   > Plaintiff "had sufficient opportunity to consider [the Separation] Agreement";
>   >
>   > Plaintiff "read [the Separation] Agreement";
>   >
>   > Plaintiff "underst[ood] all the terms and conditions";
>   >
>   > Plaintiff "entered into [the Separation] Agreement of [his] own free will and volition"; and
>   >
>   > Plaintiff had 45 days to review the Separation Agreement and RIF Memo and was "free to use as much or as little of the 45-day period as he . . . wishe[d] or consider[ed] necessary before deciding to sign [the Separation] Agreement."
>
> *See id.* at ¶ 12(A).
>
>   The Separation Agreement clearly "advised and encouraged" Plaintiff to "consult with his own independent counsel before signing," *see id.*, an instruction Plaintiff admits Ms. Denmark also verbally provided to him during their December 23, 2015 meeting. Plaintiff met with his attorney, Edward Kopko, who represents him in this action, regarding the proposed Separation Agreement.

Thirty-seven days after receiving the Separation Agreement, and after conferring with his attorney, Plaintiff signed and returned the Separation Agreement by hand-delivering his signed Separation Agreement to Ms. Denmark, at Defendant's Cortland facility, on January 29, 2016. Although the Separation Agreement expressly provided a seven-day revocation period, Plaintiff never revoked his signature. Plaintiff received the full monetary consideration Defendant promised him in the Separation Agreement, and he never returned that consideration to Defendant.

On April 24, 2017, Plaintiff filed his complaint in this action. *See* Dkt. No. 1 ("Complaint"). In his complaint, Plaintiff asserted the following causes of action: (1) "violat[ion of] 42 U.S.C. § 1983 by violating the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*"; (2) "violat[ion of] the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*"; (3) violat[ion of] New York Executive Law, § 296, related to age discrimination"; (4) violat[ion of] the OWBPA, § 626(f)[(1)](F)(ii)"; (5) "violat[ion of] the OWBPA, § 626(f)[(1)](H)(i)(ii)"; (6) violation of "29 C.F.R. Section 1625.22(a)(3)"; (7) fraudulent inducement; and (8) "inflict[ion of] mental pain and anguish." *See* Complaint at ¶¶ 65-72.[2]

After the parties completed discovery on the issues relevant to the validity and enforceability of the Separation Agreement, Defendant filed the pending motion for summary judgment. *See* Dkt. No. 20. Plaintiff filed opposition to the motion, *see* Dkt. No. 21, to which

---

[2] Defendant notes that, after Plaintiff filed his complaint, "[t]he parties and the Court agreed that the case would proceed most efficiently if the parties first addressed the issue of whether Plaintiff previously released the claims he now asserts. To this end, the Court temporarily stayed merits-based discovery and motion deadlines, and permitted bifurcated discovery, with the initial phase focused upon issues relevant to the validity and enforceability of the Separation Agreement." *See* Dkt. No. 20-1 at 5.

References to page numbers of documents in the record are to the page numbers that the Court's Electronic Case Filing system generates.

-4-

Defendant filed a reply, *see* Dkt. No. 22.

### III. DISCUSSION

**A.     Preliminary matters**

*1. Plaintiff's response to Defendant's Statement of Material Facts*

Local Rule 7.1(a)(3) provides as follows:

> Any motion for summary judgment shall contain a Statement of Material Facts. The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits. It does not, however, include attorney's affidavits. <u>Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion.</u>
>
> * * * * * * * * * *
>
> The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs**. Each denial shall set forth a specific citation to the record where the factual issue arises.** <u>The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert.</u> The non-movant's response may also set forth **any additional material facts** that the non-movant contends are in dispute in **separately numbered paragraphs, followed by a specific citation to the record where the fact is established**.

N.D.N.Y. L.R. 7.1(a)(3) (bolding added).

As Defendant accurately points out, Plaintiff's response to Defendant's Statement of Material Facts contains no citations to the record. *See generally* Dkt. No. 21-2, Plaintiff's Response

to Statement of Undisputed Facts and Plaintiff's Counter-Statement of Facts. Furthermore, Plaintiff's "Counter-Statement of Facts," to the extent that Plaintiff intends these statements to be "additional material facts," are not in "separately numbered paragraphs" nor are they "followed by a specific citation to the record where the fact is established." *See generally id.*

The underlying purpose of Local Rule 7.1(a)(3) "is to assist the court in framing the issues and determining whether there exist any triable issues of fact that would preclude the entry of summary judgment." *Cf. Younglood v. Glasser*, No. 9:10-CV-1430, 2012 WL 4051846, \*4 (N.D.N.Y. Aug. 22, 2012) (citation and footnote omitted). Furthermore, as courts in this District have indicated on numerous occasions, this District's "'Local Rules requirements are not empty formalities.'" *Willig v. Swarts*, No. 1:12-CV-1649, 2015 WL 5093771, \*2 (N.D.N.Y. Aug. 28, 2015) (quoting *Bombard v. Gen. Motors Corp.*, 238 F. Supp. 2d 464, 467 (N.D.N.Y. 2002) (stating that "[t]he courts of the Northern District have adhered to a strict application of Local Rule 7.1(a)(3)'s requirement on summary judgment motions" (citations omitted))).

Since Plaintiff's response to Defendant's Statement of Material Facts does not comply with the requirements of Local Rule 7.1(a)(3), the Court accepts the factual assertions that Defendant set forth in its Statement of Material Facts as true to the extent that the evidence in the record supports those facts. *See Aktas v. JMC Dev. Co., Inc.*, 877 F. Supp. 2d 1, 5 n.3 (N.D.N.Y. 2012) (accepting the third-party defendants' statement of material facts as true because the defendant/third-party plaintiff failed to respond to it in accordance with Local Rule 7.1(a)(3) (citations omitted)).

### *2. Plaintiff's abandonment of his state-law claims under New York Human Rights Law*

Defendant notes that, although it moved for summary judgment with regard to all of Plaintiff's claims, Plaintiff only responded to its arguments concerning his ADEA claims. Therefore, Defendant asserts that the Court should conclude that Plaintiff has abandoned his state-law claims under the New York Human Rights Law ("NYHRL").

As the Second Circuit explained in *Jackson v. Fed. Express*, 766 F.3d 189 (2d Cir. 2014), "[g]enerally . . . a partial response [to a motion for summary judgment] reflects a decision by a party's attorney to pursue some claims or defenses and to abandon others." *Id.* at 196. "Moreover, preparation of a response to a motion for summary judgment is a particularly appropriate time for a non-movant party to decide whether to pursue or abandon some claims or defenses. Indeed, Rule 56 is known as a highly useful method of narrowing the issues for trial." *Id.* Finally, "[w]here abandonment by a counseled party is not explicit but such an inference may be fairly drawn from the papers and circumstances viewed as a whole, district courts may conclude that abandonment was intended." *Id.*

In its Memorandum of Law, Defendant included a section entitled "The Separation Agreement is Likewise Valid and Enforceable Under the NYHRL's 'Totality of the Circumstances' Test." *See* Dkt. No. 20-1. In this section, Defendant addressed Plaintiff's claims under the NYHRL and set forth its reasons for arguing that the Court should grant its motion for summary judgment and dismiss Plaintiff's NYHRL claims under the "totality of the circumstances" test.

In response, Plaintiff's Memorandum of Law makes no mention of his NYHRL claims or the "totality of the circumstances" test that would apply to those claims. In fact, in his Memorandum of Law, Plaintiff focuses entirely on the issue of whether the Separation Agreement complied with the

-7-

OWBPA and whether Defendant's representations to him were fraudulent.

Viewing the papers that the parties submitted in support of and in opposition to Defendant's motion, the Court finds that, based on these submissions and the circumstances in their entirety, Plaintiff has abandoned his claims under the NYHRL. Therefore, the Court grants Defendant's motion for summary judgment with regard to those claims.

### *3. The troublesome email chain*

In paragraph 33 of this Declaration in opposition to Defendant's motion for summary judgment, Plaintiff asserts that, "[b]y email dated January 19, 2016, I inquired about the deadline for submitting the Separation Agreement and [Ms.] Denmark responded, suggesting that I turn in the Separation Agreement earlier than February 15, 2016:

> [Email from Plaintiff to Ms. Denmark]
> Good morning, Pamela,
> When is the deadline for signing the document?
> I am in the process of setting up a computational fluid dynamics
> consulting business. I intend to talk to my lawyer about this business
> setup as well as have him review the severance document around the
> end of January if not sooner.
> Regards,
> Amadou
>
> [Email from Ms. Denmark to Plaintiff]
> I suggest we meet to discuss this further. I'm thinking we could meet
> this week or next and you can give me your signed Agreement at the
> same time. When would be a good time for you?
> Best regards,

*See* Dkt. No. 21-1, Declaration of Amadou Sowe ("Sowe Decl.") at ¶ 33.

Plaintiff further asserts, in the next paragraph, that, "[b]y these emails from [Ms.] Denmark, I felt that [Ms.] Denmark was pressing me to deliver the Separation Agreement to [Ms.] Denmark

prior to the February 15, 2016 deadline." *See id.* at ¶ 34.

Then in the next paragraph of his declaration, Plaintiff states, "By email dated January 19, 2016 [Ms.] Denmark told me that she would not be at Pall after February 1, 2016:

> On Tue, Jan 19, 2016 at 10:18 AM, <pamela_denmark@pall.com> wrote:
>
> Hi Amadou,
>
> The deadline is February 15th. Remember I won't be here after February 1st. So if we don't meet before February 1st then Melanie [Carr] can discuss the PTO [Personal Time Off] with you.
>
> Starting your own business sounds like an exciting adventure!! Good luck!
>
> Best regards,

*See id.* at ¶ 35.

Finally, Plaintiff states that,

> [e]ven though I wanted the additional time after February 1, 2016 to submit the Separation Agreement, I felt compelled to submit the Separation Agreement to [Ms.] Denmark before [Ms.] Denmark left prior to February 1, 2016, and I made arrangements to meet with [Ms.] Denmark on Friday, January 29, 2016 when I delivered the signed Separation Agreement to [Ms.] Denmark.

*See id.* at ¶ 36.

Defendant claims that Plaintiff's cutting and pasting from the entire email chain from which he took these passages is misleading and that, additionally, although Plaintiff should have turned this email chain over to Defendant in response to its discovery request, he failed to do so.[3] The Court has reviewed the entire email chain, which Defendant provided as part of its reply to

---

[3] This email chain is clearly responsive to Defendant's discovery request; and, therefore, Plaintiff should have provided it to Defendant during discovery.

-9-

Plaintiff's opposition to its motion. *See* Dkt. No. 22-4, Reply Declaration of Melanie Carr, at ¶ 2; Dkt. No. 22-5, Exhibit 1 to Reply Declaration of Melanie Carr. Having done so, it is clear that Ms. Denmark never provided Plaintiff with any misleading information about the deadline for returning the Separation Agreement nor did she exert any pressure on Plaintiff to return the Separation Agreement prior to her leaving Defendant's employ at the end of January 2016. In fact, when Plaintiff asked her directly what the deadline was, she responded, "February 15th." In addition, until January 19, 2016, the email chain, from which Plaintiff cut and pasted these portions, related to Plaintiff's questions about the calculation of his PTO, which he directed to Ms. Denmark and Mr. Sorensen, with copies to Melanie Carr, Ms. Denmark's boss, and Traci Resch. Thus, it is not surprising that Ms. Denmark reminded Plaintiff that she would not be there after February 1st and that, therefore, if they did not meet before that time, he could continue his discussion about the calculation of his PTO with Ms. Carr.

For all these reasons, the Court finds that Plaintiff's reliance on this email chain to create an issue of fact regarding the issue of whether the Separation Agreement met the requirements of the OWBPA is unavailing.

**B.    Plaintiff's claim that the Separation Agreement does not meet the requirements of the OWBPA**

"In 1990, Congress enacted the Older Workers Benefit Protection Act ("OWBPA"), which 'amend[ed] the ADEA[] to impose specific requirements for releases covering ADEA claims.'" *McCormack v. IBM*, 145 F. Supp. 3d 258, 266 (S.D.N.Y. 2015) (quoting *Ridinger*, 651 F.3d at 313). "'A purported waiver of ADEA claims is governed by [OWBPA], which states that "an individual may waive his rights only if the waiver is knowing and voluntary."'" *Id.* (quoting *Wahab v. Estee*

*Lauder Cos., Inc.*, No. 12-CV-3932, 2014 WL 4904592, at *16 (E.D.N.Y. July 17, 2014) (quoting 29 U.S.C. § 626(f)(1)), *adopted by* 2014 WL 4906511 (E.D.N.Y. Sept. 30, 2014)).

The OWBPA provides that "a waiver may not be considered knowing and voluntary unless at a minimum" certain conditions are met, the following of which are at issue in this case:

> if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the individual is given a period of at least 45 days within which to consider the agreement [and]
>
> * * * * * * * * * *
>
> if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the employer (at the commencement of the period specified in subparagraph (F)) informs the individual in writing in a manner calculated to be understood by the average individual eligible to participate, as to –
>
> (i) any class, unit, or group of individuals covered by such program, any eligibility factors for such program, and any time limits applicable to such program; and
>
> (ii) the job title and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program.

29 U.S.C. § 626(f)(1)(F)(ii), (H)(i), (H)(ii).

"'The OWBPA strictures on waivers are strict and unqualified[,]' and '[a]n employee may not waive an ADEA claim unless the employer complies with the statute.'" *McCormack*, 145 F. Supp. 3d at 267 (quoting *Ridinger*, 651 F.3d at 314). "'The burden of proving that a claimed "waiver was knowing and voluntary" within the meaning of the OWBPA is on "the party asserting the validity of [the] waiver."'" *Id.* (quoting *Ridinger*, 651 F.3d at 314 (quoting 29 U.S.C. § 626(f)(3))) (citing *Wahab*, 2014 WL 4904592, at *17 (same)).

Furthermore, "'the OWBPA requirements set out in § 626(f) are only minimum requirements to find a waiver knowing and voluntary, and . . . the ultimate test remains whether that waiver was *in fact* knowing and voluntary.'" *Id.* (quoting *Sheridan v. McGraw-Hill Cos., Inc.*, 129 F. Supp. 2d 633, 638 (S.D.N.Y. 2001)) (other citation omitted). "To determine whether a waiver is knowing or voluntary, '[d]istrict courts review the totality of the circumstances.'" *Id.* (quoting *Callahan v. Unisource Worldwide, Inc.*, 451 F. Supp. 2d 428, 434 (D. Conn. 2006)). In this context, "[t]he EEOC's regulations provide that facts and circumstances that bear on the question of whether a waiver is knowing and voluntary include whether 'there is a material mistake, omission, or misstatement in the information furnished by the employer to an employee in connection with the waiver.'" *Id.* at 367-68 (quoting 29 C.F.R. § 1625.22(a)(3)) (citing *O'Grady v. Middle Country Sch. Dist. No. 11*, 556 F. Supp. 2d 196, 201 (E.D.N.Y. 2008) ("Nonstatutory circumstances, such as fraud, duress, or coercion in connection with the execution of the waiver, may render an ADEA waiver not knowing and voluntary.")). In fact, "'[t]he legislative history of the OWBPA indicates that the fundamental purpose of its waiver provisions is to ensure that an older worker who is asked to sign an ADEA waiver does so in the absence of fraud, duress, coercion, or mistake of material fact.'" *Id.* (quoting *Butcher v. Gerber Prods Co.*, 8 F. Supp. 2d 307, 319 (S.D.N.Y. 1998)).

### *1. Compliance with OWBPA, 29 U.S.C. § 626(f)(1)(F)(ii)*

The record belies Plaintiff's claim that Defendant did not give him a period of at least 45 days to consider the Separation Agreement. First, the Separation Agreement, which Plaintiff received on December 23, 2015, explicitly stated that the "Agreement must be executed and delivered to Employer (Attn: Pamela Denmark, Human Resources Manager) on or before **February**

**15, 2016**," indicating that Plaintiff had more than 45 days to review the agreement. Furthermore, Plaintiff's assertion that, because Ms. Denmark left Defendant's employ as of February 1, 2016, Defendant somehow shortened the 45-day period is specious, particularly in light of the fact that, when, on January 19, 2016, Plaintiff asked Ms. Denmark in an email when the deadline for returning the agreement was, she responded, "February 15, 2016." Finally, Plaintiff has not pointed to anything in the record that would support "his belief" that he had to return the Separation Agreement to Ms. Denmark, and no one other than Ms. Denmark, before she left Defendant's employ, particularly in light of the fact that the Separation Agreement defines "Employer" as "PALL CORPORATION, a New York corporation with its principal offices at 25 Harbor Park Drive, Port Washington, New York 11050." *See* Dkt. No. 20-7, Separation and General Release Agreement, at 2.

For all these reasons, the Court concludes that the undisputed facts demonstrate that the Separation Agreement complied with 29 U.S.C. § 626(f)(1)(F)(ii).

### *2. Compliance with OWBPA, 29 U.S.C. § 626(f)(1)(H)(i), (ii)*

Plaintiff argues that the Separation Agreement and the accompanying RIF Memo do not comply with § 626(f)(1)(H)(i) and (ii). The RIF Memo states, in pertinent part, "[c]ertain employees of the Central Technology Organization division of Pall Corporation (the "Company") have been notified by the Company that their employment with the Company will terminate in connection with a reduction in force with respect to such division (the "Reduction in Force")." *See* Dkt. No. 20-10 at 2. Plaintiff asserts that "[t]he RIF is false, deceptive, and misleading in that the 'Central Technology Organization division of Pall Corporation' [("CTO"), in which he worked,] is a

world-wide division, not simply a division within the United States, and [Defendant] listed only employees is [sic] the United States, and did not include in the Decisional Unit other . . . employees outside the United States." *See* Complaint at ¶ 42.

In its Statement of Material Facts, Defendant asserts that, "[i]n December 2015, [it] effected a reduction in force within its CTO, resulting in the separation of thirteen (13) CTO employees, including Plaintiff . . . [and] [t]he impacted employees worked at [Defendant's] facilities in Cortland, NY, Port Washington, NY, and Pensacola, FL." *See* Dkt. No. 20-2 ("Defendant Statement of Facts") at ¶¶ 9-10 (citing Carr Decl. at ¶ 3). As noted, because Plaintiff's response to Defendant's Statement of Material Facts did not comply with Local Rule 7.1(a)(3), the Court deems Defendant's facts admitted because they are supported by the record, specifically Ms. Carr's Declaration as well as the RIF Memo.[4]

In addition to information about the decisional unit, in this case Defendant's CTO division, the employer must also inform the affected employee of "the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are eligible or selected for the program." 29 U.S.C. § 626(f)(1)(H)(ii); *see*

---

[4] Furthermore, Defendant asserts that Plaintiff has manufactured an objection to the RIF Memo's limitation to U.S. employees without any factual evidence to support this objection or citing any authority that would require an employer to include non-U.S. employees in ADEA workforce reduction disclosures accompanying a separation agreement. *See* Dkt. No. 22 at 10. Moreover, Defendant notes that the OWBPA amended the ADEA, which generally protects only U.S. employees. *See id.* (citing 29 U.S.C. § 630(f)).

In pertinent part, 29 U.S.C. § 630(f) provides that "[t]he term 'employee' includes any individual who is a citizen of the United States employed by an employer in a workplace in a foreign country." 29 U.S.C. § 630(f). Plaintiff has not pointed to anything in the record to indicate that, if in fact Defendant's CTO division is international in scope, any of the individuals who work in Defendant's CTO division outside the United States are United States citizens and, thus, would be considered "employees" within the meaning of the ADEA and the OWBPA.

*also Ribble v. Kimberly-Clark Corp.,* No. 09-C-643, 2012 WL 589252, *13 (E.D. Wis. Feb. 22, 2012) (noting that "[t]he employer must include the job titles and ages of all of the employees within the decisional unit and indicate those who are retained and those whose employment was terminated").

In this case, the RIF Memo that Defendant provided to Plaintiff included a chart with the "age," "title," and "number" of employees who had a particular title for both employees in the CTO who were "ineligible," *i.e.,* "those employees of the Company who are not being terminated on or about such date, but who have the same job classification or are in the same organizational unit as eligible employees" and those who were "eligible," *i.e.*, "[t]hose employees whose employment will terminate in connection with the Reduction in Force." *See* Dkt. No. 20-10 at 2.

As the undisputed facts make clear, the RIF Memo, which Defendant provided to Plaintiff, provided all of the information that § 626(f)(1)(H)(i) required, *i.e.*, the definition of the decisional unit and all of the information that § 626(f)(1)(H)(ii) required, *i.e.,* job title and ages of individuals who were both eligible and ineligible. Therefore, the Court finds that Defendant has demonstrated that the Separation Agreement and RIF Memo comply with the requirements of 29 U.S.C. § 626(f)(1)(H)(i), (ii).

**C.    Plaintiff's claim that Defendant fraudulently induced him to sign the Separation Agreement**

Plaintiff asserts that Defendant fraudulently induced him to sign the Separation Agreement by falsely, deceptively and misleadingly telling him that his position was being eliminated as part of an RIF when Defendant actually was not eliminating his position.

This claim does not require much discussion. As the court explained in *McCormack*,

"'[f]raudulent inducement claims are subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b)[.]'" *McCormick*, 145 F. Supp. 3d at 275 (quoting *Eaves*, 785 F. Supp. 2d at 246-47). Therefore, a plaintiff "'must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent[.]"'" *Id.* at 275-76 (quoting *First Hill Partners*, 52 F. Supp. 3d at 637 (quoting *Rombach*, 355 F.3d at 170)).

Plaintiff bases his claim on his allegation that, "[o]n or about February 12, 2016, (after the [sic] February 6, 2016, the date on which [Defendant] believed the Release to be effective) [Defendant] posted an advertisement for an [sic] job position on 'glassdoor.com' for an 'Engineer II-Computational Fluid Dynamics-Cortland, New York,' position similar to the one formerly occupied by [Plaintiff] and performing identical duties." *See* Complaint at ¶ 58 & Exhibit "4" attached thereto. Plaintiff further alleged that he "did not sign the Release knowingly and voluntarily, because if he had known that [Defendant] was maintaining a position identical to the position formerly occupied by [Plaintiff], [he] would not have relinquished his right to sue for age discrimination in exchange for the compensation offered to him arising from the Release." *See id.* at ¶ 59.

At his deposition, when asked about this job posting and its relevance to his claim that Defendant had fraudulently induced him to sign the Separation Agreement, Plaintiff stated that he had included this job posting in his discovery materials because

> A. [T]he job posting was put in less than five days after the revocation period.
> So you could see that the reason for adding this in there is really to prove my point, that [Defendant's] argument was completely fraudulent, because they tell you that we're eliminating your position because of RIF, which all of a sudden you sign the Separation

> Agreement, and then they post the job that you had.
> That's the reason for having that in there.
>
> Q. Are you claiming that this job posting was for the position that you occupied with [Defendant]?
>
> A.   It's a position that I could do at [Defendant].

*See* Dkt. No. 22-2, Transcript of Plaintiff's Deposition, at 77:18-78:11.

In response, Melanie Carr, Defendant's Director of Human Resources at the Cortland facility, stated in her reply declaration that she had reviewed the job description to which Plaintiff had referred in ¶ 38 of his Declaration, *i.e.,* the one discussed above, and it was not the posting for Plaintiff's former position. *See* Dkt. No. 22-4 ("Carr Reply Decl.") at ¶ 3.

In light of the fact that Plaintiff backed away from the allegation in his complaint that the job posting in question was for the position that he had formerly held and, instead, was a position that he "could do," and Ms. Carr's declaration that the posting in question was not for Plaintiff's former position, the Court finds that, even if Plaintiff sincerely believed that his termination was the product of unlawful discrimination, this belief was "insufficient to support an allegation of fraudulent inducement when no other evidence supports this claim." *Sheridan v. McGraw-Hill Cos., Inc.*, 129 F. Supp. 2d 633, 638-39 (S.D.N.Y. 2001) (citation omitted). As the court noted in *Sheridan*, "allowing such a belief to invalidate a waiver [would] preclude[] the possibility of ever having an enforceable waiver of discrimination claims." *Id.* at 639.

Accordingly, for these reasons, the Court concludes that Plaintiff has not raised an issue of fact with regard to his claim of fraudulent inducement.

## IV. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion for summary judgment, *see* Dkt. No. 20, is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: August 14, 2018
Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Judge